## GREGORY v. KEDLEY.

### No. 5724.

Court of Appeal of Louisiana.
Second Circuit.

Dec. 9, 1938.

George W. Bolton, Jr., and D. Ross Banister, both of Monroe, for appellant.

Theus, Grisham, Davis & Leigh, of Monroe, for appellee.

HAMITER, Judge.

In October, 1927, one Aaron Jackson, Sr., executed a deed in favor of defendant, Anna Kedley, describing Lot 9 of Square 2 of the Aaron Jackson Addition to the City of Monroe, Louisiana. This was in consummation of a sale agreement between the parties. At that time said grantor owned numerous lots in that subdivision, including the one above mentioned and also Lot 9 of Square 1.

The following year defendant erected a house on Lot 9 of Square 1, believing that she held title to the lot. This was the parcel of land that she intended and agreed to purchase. The erection of the structure was financed through a loan which she obtained from the Peoples Homestead & Savings Association of Monroe, Louisiana, and the payment of the borrowed funds was sought to be secured by a mortgage that she executed on Lot 9 of Square 2, the property described in the aforementioned deed. In 1930 there was a tax sale by the City of Monroe, for unpaid taxes of 1929, of all of the property then owned by Aaron Jackson. Plaintiff, A. B. Gregory, was the purchaser of that property. The tax deed which he received specifically described Lot 9 of Square 1 of said subdivision.

Continuously since the erection of her house, defendant has been assessed with and paid the taxes on "Lot 9 of Square 2, with improvements". She has also enjoyed, during that period, possession and occupancy of the house.

On December 3, 1937, plaintiff instituted this petitory action. He alleges that he is the true and lawful owner of said "Lot 9 of Square 1 of Aaron Jackson Addition to the City of Monroe, as shown by plat of record in Plat Book No. 4, page 22, together with all improvements situated thereon and appurtenances thereto belonging," and that he acquired such property through the above mentioned tax sale. He further alleges defendant's actual physical possession of the property without any title whatsoever, and that she refuses to deliver possession thereof to him. The prayer is for judgment recognizing plaintiff as owner of the property and entitled to its full and undisturbed possession, and ordering delivery thereof to him.

Defendant resists the action by denying that her house was conveyed at the tax sale. She admits, however, that by reason of plaintiff's acquisition of the lot he is entitled to the house on his paying her its value and making reimbursement for the taxes that she has paid. She prays for a rejection of plaintiff's demands, and, in reconvention, that she have judgment against plaintiff for the amount spent for building the house and also for the sum of $134.65, being the taxes paid thereon. She further prays that the right be granted her to retain possession of the premises until fully reimbursed.

The judgment of the district court, rendered after due trial of the case on its merits, recognized plaintiff as "the true and lawful owner of Lot 9 of Square 1 of Aaron Jackson Addition to the City of Monroe, Louisiana, together with the im-

provements thereon and appurtenances thereunto belonging, including the one-story frame residence constructed thereon by Anna Kedley". It decreed recovery on the reconventional demand for the sum of $934.65, with interest, and recognized defendant as the possessor of the property in good faith and entitled to retain such possession until payment to her of the named sum. The amount awarded represented the value of the house, or $800, and taxes paid of $134.65. Defendant was cast for the costs.

This appeal was perfected by plaintiff. It has been answered by defendant who asks that the judgment be amended so as to award her $152.71 for taxes paid instead of $134.65, and ordering that the costs of the case be taxed against plaintiff; and, as amended, that it be affirmed.

A written stipulation of the attorneys discloses the following agreed facts:

"That Anna Kedley early in October, 1927 went onto the lot on which she built her house with Aaron Jackson, Sr., and agreed to buy that lot for a cash price of $400.00.

"2. That when the price was agreed upon Aaron Jackson had the deed made up and put on record, and she paid him the $400.00 in cash. She knew nothing about land numbers and left it to Aaron Jackson, Sr., to make up the deed for her, and she thought that the lot deeded to her was the lot that she had gone onto with Aaron Jackson and traded for.

"3. She paid this $400.00 to him on October 5th, 1927 and took a deed to the lot that she thought she had bought, which was Lot 9, Square 1 of the Aaron Jackson, Sr., addition to the City of Monroe, but in the deed made to her, through error and mistake the lot was described as Lot 9, Square 2, Aaron Jackson Sr. Addition to the City of Monroe, which is just across the street from Lot 9 of Square 1, which she intended to buy and on which she built her house.

"4. That soon after buying the lot she went with Aaron Jackson, Jr., onto the lot she had intended to buy, and believing that she had a deed to it, contracted with him to build her a house on it for a contract price of $1100.00. That she borrowed the $1100.00 with which to build this house from the People's Homestead & Savings Association, and on the 14th day of September, 1928, mortgaged the lot that she thought she had a deed to, together with the house on it, to the People's Homestead & Savings Association to secure the money borrowed to build the house with. The mortgage, however, perpetuated the same error that Aaron Jackson had made in the description in his deed to her, and it was mortgaged to the People's Homestead & Savings Association as Lot 9, of Square 2 of Aaron Jackson Sr. Addition to the City of Monroe.

"5. That she moved into the house as soon as it was completed, to-wit, on the 17th day of October, 1928, and has lived in it ever since and is living in it now.

"6. That thereafter in 1934 she refinanced this mortgage through the Home Owners Loan Corporation, and borrowed from it $920.00 to pay off the balance due the People's Homestead & Savings Association at that time. This error in description was carried forward in the mortgage to secure this loan.

"7. That she never knew Lot 9 of Square 1 was being offered for sale for taxes.

"8. That no notice was given her by the Tax Collector that Lot 9 of Square 1 would be sold for taxes; that Exhibit A attached hereto contains true extracts of the Assessment Rolls of Ouachita Parish, Louisiana for the years 1929 through 1937, including the memoranda made thereon by the respective Tax Collectors for the State of Louisiana, Parish of Ouachita, and City of Monroe, as to payment of taxes.

"9. That the only house ever built on Lot 9 of Square 1 was the one built by Anna Kedley.

"10. That there is not now nor has there ever been a house on Lot 9 of Square 2; that both Aaron Jackson Sr. and Jr. are dead.

"11. That the house now in controversy is presently worth the sum of Eight Hundred ($800.00) Dollars.

"12. That Aaron Jackson, Sr., owned both Lot 9 of Square 1 and Lot 9 of Square 2 of Aaron Jackson's Addition in 1927 prior to the date of sale or adjudication of either of these lots.

"13. That at the time of the tax sale to Dr. Arthur B. Gregory of Lot 9 of Square 1 of Aaron Jackson's Addition, Dr. Gregory had no knowledge as to who built the house in question thereon and knew nothing of any claims thereto by Anna Kedley or any one else.

"14. That the description of lands for all assessments was taken by the Tax Assessor from the deeds recorded in the Conveyance Records of Ouachita Parish, Louisiana."

According to the information furnished by the aforementioned Exhibit A, defendant, Anna Kedley, was assessed with Lot 9, Square 2, with improvements, from 1929 to 1937, both years inclusive. The amount of taxes paid by her on such improvements during that period totaled $152.71. Lot 9, Square 1, on which the house actually rested, was assessed to Aaron Jackson in 1929 and 1930, and thereafter to plaintiff herein; and its assessment was as a vacant lot.

The tax deed under which plaintiff claims title to said Lot 9 of Square 1, with the house thereon, recites in part:

"Now, therefore, by virtue of the authority vested in me by law, and in consideration of all the premises hereinabove set forth and related, I, P. A. Poag, Tax Collector within and for the City of Monroe, Parish of Ouachita, State of Louisiana, do hereby sell, convey, and transfer to the said purchaser, Dr. A. B. Gregory, all the right, title and interest of the said Aaron A. Jackson, Tax debtor, in and to the property hereinabove last described."

█ It is plaintiff's contention that the building became immovable by nature when placed upon the lot; that he was an innocent third party purchaser, relying upon the public records, when he acquired the property at tax sale; that no recorded instrument disclosed defendant's separate ownership of the dwelling; and that his purchase of the lot vested in him title to such improvements that were located thereon.

We are of the opinion that under the peculiar facts of this case the doctrine of "innocent purchaser for value", which plaintiff seeks to invoke, has no application here, and that defendant was not divested of her rights and interests in the dwelling through and by reason of the mentioned tax sale. As the above quoted extract from the tax deed discloses, plaintiff's purchase was restricted to such title as the tax debtor had. Aaron Jackson neither held nor claimed any interest in and to the house, and none was transferred to plaintiff.

█ The record abundantly discloses that defendant was and is a bona fide possessor of the premises, and by virtue of this status the rights of the parties to this proceeding are governed by the following provisions of the Revised Civil Code:

"Nevertheless, if the plantations, edifices or works have been made by a third person evicted, but not sentenced to make restitution of the fruits, because such person possessed bona fide, the owner shall not have a right to demand the demolition of the works, plantations or edifices, but he shall have his choice either to reimburse the value of the materials and the price of workmanship, or to reimburse a sum equal to the enhanced value of the soil." Article 508.

"The rights, which are peculiar to the possessor in good faith, are:

"1. The right which such a possessor has to gather for his benefit the fruits of the thing, until it is claimed by the owner, without being bound to account for them, except from the time of the claim for restitution.

"2. The right which such a possessor has, in case of eviction from the thing reclaimed, to retain it until he is reimbursed the expenses he may have incurred on it." Article 3453.

Pursuant to the quoted codal provisions defendant, as a possessor in good faith, is entitled to be paid the value of the improvements, or $800; and also entitled to retain possession of the premises, without the payment of rent, until reimbursement of such sum, together wtih the taxes paid by her. Roussel v. Railways Realty Co., 165 La. 536, 115 So. 742; Eddins v. Giles, La.App., 142 So. 266.

The Home Owners Loan Corporation, which made the loan to defendant in the year 1934, as disclosed by the above copied agreed statement of facts, is not a party to this proceeding; and the rights that it has or might have as against the litigants herein are not presented for our consideration.

█ The proof in the record discloses that defendant paid the sum of $152.71 as taxes on the improvements. The allegations of her reconventional demand assert such payment to be only $134.65. However, the referred to evidence was introduced without objection, with the result that her pleadings are deemed to have been amended to conform to the proof, and she should be allowed recovery for

the larger amount. This is as requested in the answer to the appeal.

The judgment decreed that defendant pay all costs of the trial court. As at least partial success attended the demands of each litigant, we think that both should pay such costs in equal proportions. An appellate court of this state has the power to tax court costs against any party to the suit, as in its judgment may be decmed equitable. Act No. 229 of 1910.

Accordingly, it is ordered that the judgment be amended to the extent of changing the monetary award made in favor of Anna Kedley and against Arthur B. Gregory from $934.65 to $952.65, and of ordering the costs of the district court to be borne by both parties in equal proportions; and as thus amended, the judgment is affirmed. The costs of this appeal shall be paid by plaintiff.