348 So.2d 1260 (1977)
STATE of Louisiana, DEPARTMENT OF HIGHWAYS, Plaintiff-Appellee,
v.
Milton C. TRICHEL, Jr., et al., Defendants-Appellants.
No. 13274.
Court of Appeal of Louisiana, Second Circuit.
June 22, 1977.
Rehearing Denied, August 29, 1977.
*1261 Milton C. Trichel, Jr., Neil Martin Trichel by Milton C. Trichel, Jr., Shreveport, for defendant-appellants.
D. Ross Banister, William W. Irwin, Jr., Jerry F. Davis, Bernard L. Malone, Jr. by Bernard L. Malone, Jr., Baton Rouge, for plaintiff-appellee.
Before PRICE, MARVIN, JONES, JJ.
Rehearing Denied, En Banc,[*] August 29, 1977.
MARVIN, Judge.
Under the quick-taking statute (R.S. 48:441 et seq.), the State claims to have expropriated from defendants for the controlled-access 1-220 Loop around Shreveport, not only .892 acre (shown shaded in diagram following), but as well, any right of access to U.S. Highway # 71 (North Market Street) defendants might have enjoyed from the 523.54 feet remaining as frontage on Highway # 71 after the taking. The lower court agreed with the State. We do not.
This diagram illustrates the controversy:

The State's petition substantially conforms to the statutory requirements for the taking of the property described therein (the .892 acre). R.S. 48:442, 444. It alleges that the 1-220 facility will be a controlledaccess facility and that no person shall have any right of access to, from or across the facility to or from abutting lands. The order of expropriation or declaration of taking (R.S. 48:444) reads in part:
". . . IT IS . . . FURTHER ORDERED that the full ownership of the property described below . . . being a controlled-access facility and no person has any right of access to, from or across said facility to or from abutting lands . . . is expropriated and taken for highway purposes . . . [description of .892 acre tract follows, being referred to in part as "Parcel No. 11-3, on a . . . plat of survey . . . annexed . . . being outlined in red. . ."]
Like the written description, parcel 11-3 outlined in red on the attached survey, does not remotely refer to the 523.54 feet of remaining frontage north of the expropriated tract, but circumscribes the .892 acre description.
R.S. 48:301-307 (Act 129 of 1955) gives broad authority to the several highway *1262 agencies of political subdivisions to plan, designate, establish, regulate . . . and provide controlled-access facilities whenever it is determined that traffic conditions, present or future, justify such facilities. R.S. 48:301.
R.S. 48:303 expressly provides that the agency may acquire "private or public property and property rights for controlled-access facilities and service roads, including rights of access . . . by . . . purchase . . . or expropriation."
R.S. 48:304 provides that the highway agency ". . . may designate and establish an existing street or highway as . . . being a controlled-access facility." This section provides further:
"* * * [N]otice of intent to establish such controlled-access facility within a municipality or within five miles thereof shall be delivered to the executive offices of such municipality together with plats outlining in reasonable detail the proposal not less than thirty days prior to the undertaking of such construction. . . ."
It is abundantly clear that the State has the authority (1) to expropriate the landowners' right of access across the 523.54 feet of frontage to the existing Highway # 71 (North Market Street) and (2) to designate that portion of Highway # 71 as a controlled-access highway. It is equally clear, however, that the State has not followed the statutory design, at least insofar as this record reflects, in either instance.
We hold that the State in the instant expropriation proceeding has acquired in full ownership the .892 acre described and has properly obtained judicial declaration that no one has access to, from or across the expropriated .892 acre from abutting lands to the 1-220 facility. We hold that in the instant proceeding the State has not acquired the right of access from the 523.54 feet of frontage on Highway # 71 (North Market Street) north of the .892 acre strip.
In the peculiar procedural posture of this case, the lower court erred in concluding otherwise. The issue was raised by the landowners' contesting the validity of the taking for a public use or for highway purposes, by filing the requisite motion to dismiss. R.S. 48:447. The landowners do not seriously contest the "public use" and controlled-access purposes for which the .892 acre was taken.
We therefore affirm the lower court's denying the motion to dismiss insofar as it affects the expropriation of the .892 acre and access rights to, from and across said strip to the 1-220 facility. The motion to dismiss shall not be more broadly construed so as to affect other property or property rights of the landowners and the lower court's judgment is accordingly limited. In view of this holding, it is not necessary that we pass on other procedural issues concerning statutory compliance. Substantial statutory compliance is found as to the .892 acre expropriation.
Where real estate is properly expropriated under such circumstances for a controlled-access facility, the loss of access rights is a part of the landowner's severance damage. Where no real estate is to be taken, the right of access to an existing highway may be expropriated as any other property right by complying with the statutes. R.S. 48:301, et seq.; R.S. 48:441, et seq.
As herein limited, we affirm the denial of the motion to dismiss and remand for further proceedings not inconsistent herewith.
At the cost of the State, the judgment below is modified and affirmed, and the case is remanded.
NOTES
[*] Hall, J., recused.